EDWARDS, Judge.
Plaintiffs, Emanuel Johnson and his wife, Flozell Johnson, instituted this suit against Mary Roberson Ingram, the widow and universal legatee of I. D. Ingram, to rescind a sale of immovable property,[1] wherein they allegedly purchased two lots in East Baton Rouge Parish from I. D. Ingram, and to recover the $850 purchase price plus damages and attorney’s fees. Defendant answered,[2] denying that her husband had sold the property or had received the $850 purchase price, and attacked the signature on the sale purporting to be that of I. D. Ingram as a forgery. After trial on the merits, the trial judge, in an oral ruling, found that I. D. Ingram had signed the sale and had received the $850; and rendered judgment in favor of plaintiffs, rescinding the sale and awarding the sum of $886.57. Defendant appealed.
Two questions of fact are presented for review: 1) Is the signature on the sale of September 13, 1972, that of I. D. Ingram; and 2) Did I. D. Ingram receive the $850 purchase price?
In support of the authenticity of the signature on the sale, .plaintiff, Flozell Johnson, alone testified, stating that she was acquainted with Ingram as a result of seeing him in the neighborhood, and that he appeared at the sale and signed the document in question. She testified further that she did not know whether Ingram could read or write and that this fact was never questioned or even discussed at the time of the sale. Plaintiffs offered no other evidence to support the signature inasmuch as all but one of the witnesses to the sale was deceased. But, plaintiffs did not offer an explanation for failing to find and present the testimony of the remaining witness.
Defendant specifically plead fraud as a defense, contending that the signature of I. D. Ingram on the sale is a forgery since her husband could not read or write and he always signed any document using his mark. She testified that she did not know of her husband ever signing any document except by using his mark. Defendant introduced numerous documents in support of her contention, some executed before and some after the purported sale of September 13, 1972, all clearly showing that her husband signed with an ‘X’ mark. Among these documents were: driver’s licenses (1965 and 1973); copies of two recorded sales of other property (1958 and 1962); the record in the Succession of Lena Ingram, I. D. Ingram’s first wife, wherein he signed various instruments using his mark (1971); and the record in the Succession of I. D. Ingram, which included his nuncupative will by private act, signed with his mark and containing a declaration that he was unable to sign his name, being illiterate (December 6, 1972). Additionally, defendant offered the testimony of Julius Butler, who had known her husband since 1949 and was his friend and co-worker. Butler testified that Ingram could not read, write or sign his name. Butler also stated that he observed Ingram put his mark on his paycheck, and that at times he had to accompany Ingram to the post office since Ingram could not sign for mail.
*126 LSA-C.C. art. 1848 provides:
“Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence.”
In this case, we believe that defendant has satisfied her burden of proving that the signature is a forgery. The overwhelming preponderance of the evidence convinces us that I. D. Ingram could not sign his name and did not sign this sale. We believe that the trial court’s acceptance of plaintiff’s obviously self-serving statements in the face of the documentary evidence and testimony presented by the defendant amounts to manifest error.
Be that as it may, we agree with the trial court that the central question in this case, valid signature or not, is whether Ingram received the $850.
There is very little evidence in the record concerning the $850. It does appear that plaintiffs borrowed the sum from Baton Rouge Securities by executing a note secured by a collateral mortgage on other property. However, there is no evidence that any money was ever paid to Ingram, although Mrs. Johnson testified that the money was supposed to be sent the day following the sale. Plaintiffs did not offer any documentation to support this testimony. Neither did they introduce copies of cancelled checks or any endorsements.
We can find nothing in this record which could indicate that Ingram received the money which plaintiffs seek in the present suit. In view of this fact, we find that plaintiffs have not established their right to recover the sum from this defendant.
. For the above reasons, the judgment of the trial court is reversed and judgment is herein rendered in favor of defendant dismissing plaintiffs’ suit at their cost.
REVERSED.

. The basis of the claim for recission was the undisputed fact that I. D. Ingram was without title to the property and could not, therefore, convey title to plaintiffs.

. Defendant also filed a third party demand against the Estate of Wilmon L. Richardson, the attorney-notary who passed the sale in question. This third party demand was not tried below with the principal demand and is not before us on appeal.